Cartier v. Dartmouth-Hitchcock          CV-95-298-B    06/02/97

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Margaret Cartier, Executor
of the Estate of William Cartier


    v.                                          Civil No. 95-298-B

Dartmouth-Hitchcock Medical Center



**O R D E R**

Margaret Cartier brought this action alleging that the medical malpractice of Dartmouth-Hitchcock Medical Center ("DHMC") caused the death of her husband, William W. Cartier.  In addition to her wrongful death count, she asserts claims for medical malpractice during life; improper transfer of an unstable patient in violation of New Hampshire's "Patients' Bill of Rights," N.H. Rev. Stat. Ann. § 151:21 (Supp. 1995); vicarious liability; failure to supervise; and respondeat superior.  The case was removed to federal court by DHMC based on diversity jurisdiction.

DHMC moves for summary judgment, arguing that the plaintiff has failed to produce expert testimony that William Cartier's death was caused by DHMC's negligence.  Because I conclude the

plaintiff has produced sufficient evidence to demonstrate causation, I deny the motion.

## I.   BACKGROUND

William Cartier was transferred to DHMC from the Veterans Administration Hospital ("VA Hospital") for heart catheterization, a procedure for diagnosing blockage of the coronary arteries. After DHMC completed the procedure, Mr. Cartier was transferred back to the VA Hospital, where he died. The cause of death was determined to be a "multi-system organ failure" brought on by a "generalized sepsis."[1] The sepsis was caused in part by pneumonia and in part by other forms of infection, including bacteremia (bacteria in the blood), a urinary infection, and infection at one or more sites where catheter lines entered his body. In addition to the ailments which apparently caused his death, Mr. Cartier also suffered from a serious form of prostate cancer, lung cancer, chronic obstructive pulmonary disease, and orthopedic problems.

The plaintiff has presented evidence from an expert, Dr. Michael Scovner, M.D., who treated Mr. Cartier prior to his hospitalization. Dr. Scovner criticizes the doctors at DHMC for

---

[1] "Sepsis" indicates the presence of various pus-forming and other pathogenic organisms, or their toxins, in the blood or tissues. Stedman's Medical Dictionary 1598 (26th ed. 1995).

2

failing to diagnose pneumonia in a timely fashion, failing to properly treat Mr. Cartier's edema,[2] and failing to properly treat Mr. Cartier's congestive heart failure.

## II. STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The party opposing the motion, Mrs. Cartier in this case, must set forth specific facts showing that there remains a genuine issue for trial, demonstrating some factual disagreement sufficient to deflect summary disposition.  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  This burden is discharged only if the cited disagreement relates to a genuine issue of material

---

[2]  "Edema" is an accumulation of an excessive amount of watery fluid in cells, tissues, or cavities.  Stedman's Medical Dictionary 544 (26th ed. 1995)

3

fact.  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992).

When the non-moving party bears the burden of persuasion at trial, she must "make a showing sufficient to establish the existence of [the] element[s] essential to [her] case" in order to avoid summary judgment."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  It is not sufficient to "rest upon mere allegation[s] or denials of his pleading."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, 477 U.S. at 256).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party."  Id. at 842 (citations omitted).  In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor.  Anderson, 477 U.S. at 255.

### III.  DISCUSSION

In a medical negligence action under New Hampshire law, the plaintiff's burden of proof is defined by N.H. Rev. Stat. Ann. § 507-E:2, I (Supp. 1996).[3]  That statute provides that the

---

[3]  A federal court applies state law in determining the substantive elements of a medical malpractice claim.  See Wilder v. Eberhart, 977 F.2d 673, 676 (1st Cir. 1992).

4

plaintiff must prove "by affirmative evidence which must include expert testimony . . . [t]hat as a proximate result [of the defendant's negligence], the injured person suffered injuries which would not otherwise have occurred." Id.; Bronson v. Hitchcock Clinic, 140 N.H. 798, 801 (1996). In essence, this statutory burden reflects the common law requirement that a plaintiff prove that his injuries were proximately caused by the defendant's negligence. Bronson, 140 N.H. at 801. In other words, the plaintiff must demonstrate that the defendant's negligent conduct "must be necessary to produce the plaintiff's subsequent harm, without which the harm would not have occurred, and the [conduct] must be a substantial factor, rather than a slight one, in producing [the harm]." North Bay Council, Inc. v. Bruckner, 131 N.H. 538, 548 (1989).

DHMC contends that Mrs. Cartier has failed to present expert evidence linking DHMC's alleged negligence to Mr. Cartier's death. While it is true that Dr. Scovner has not parroted the statutory language contained in N.H. Rev. Stat. Ann. § 507-E:2, I, such a recitation is not necessary to establish causation-in-fact. Bronson, 140 N.H. at 804 ("Though advisable for clarity, recitation by a medical expert of specific words or phrases mirroring statutory language is not essential . . ."). As noted

5

by the New Hampshire Supreme Court, "there is no single acceptable means by which [an expert's testimony can establish cause-in-fact]: if competent expert medical testimony is adduced from which the jury can fairly and reasonably conclude that but for a defendant's negligence an injury probably would not have occurred, the plaintiff has met his burden." Id.

Dr. Scovner's affidavit concludes that Mr. Cartier's "death, in part, is directly attributable to what I consider the negligence of . . . Dartmouth-Hitchcock Medical Center." (Affidavit of Michael Scovner, M.D. at 1-2). Dr. Scovner also opines that DHMC negligently failed to diagnose Mr. Cartier's pneumonia, and that "[t]he fact that the pneumonia was untreated worsened the sepsis condition" from which Mr. Cartier eventually died. Id. at 5. Finally, Dr. Scovner states that, in his opinion, DHMC "caused [Mr. Cartier's] death because his Congestive Heart Failure was untreated and ignored . . . and because his pneumonia/sepsis was untreated and ignored." (Id. at 15). He concludes, "[i]f these two conditions had not been ignored and had been properly treated, it is my opinion that [Mr. Cartier] would probably have survived . . . . The defendant's negligence was a substantial factor in causing [Mr. Cartier's] death." Id. The essence of Dr. Scovner's opinion was the same

6

during his deposition:

> Q:   So [Mr. Cartier] could have died without the pneumonia, but you can't say one way or the other?
> A:   I would say it's far less likely.  The pneumonia was keeping his immune system busy and he just wasn't able to fight the infection.

(Deposition of Michael Scovner, M.D. at 55-56).

Thus, taking the evidence presented by Mrs. Cartier in the light most favorable to her case and granting her all reasonable inferences therefrom, I conclude that a reasonable jury could find that, more likely than not, DHMC's alleged negligence caused Mr. Cartier's death.  To the extent that Dr. Scovner may have undermined his conclusions with other remarks during his deposition, DHMC will have an opportunity to cross-examine him at trial.


## IV.   CONCLUSION

For the foregoing reasons, DHMC's motion for summary judgment (document no. 14) is denied.

SO ORDERED.


 

 

 

_____

Paul Barbadoro

June 2, 1997                United States District Court

cc:  Gerard J. Boyle, Esq.
     Micheal Lehman, Esq.